JUDGE DAVID GUADERRAMA



**FILED**

MAY 2 0 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **EL PASO COSMETIC SURGERY MEDSPA,** | § |
| **LLC** a Texas Limited Liability Company | § |
| | § |
| **Defendants.** | § |
| | § |

# EP22CV0180

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the

Western District of Texas, and was present in Texas for all automated text messgaes, in this case

in El Paso County, Texas.

2.     Defendant EL PASO COSMETIC SURGERY MEDSPA, LLC ("Medspa") is a Limited

Liability Company organized and existing under the laws of Texas and can be served via

registered agent Ihsan Orkan Sozer 651 S Mesa Hills Dr, El Paso, TX 79912.

### JURISDICTION AND VENUE

3.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053

because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarket in

1

robocalls to Plaintiff, adds little complexity to the case.

4.     Personal Jurisdiction. This Court has general personal jurisdiction over the defendants because they have repeatedly placed calls to Texas residents, derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5.     Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

6.     This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

2

line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted

by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. §

227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing

the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017)
(codifying a June 26, 2003 FCC order).

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

4

the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20.     Plaintiff has been on the National Do-Not-Call Registry since December 2007.

21.     Defendant Medspa offers cosmetic plastic surgery services to consumers.

22.     Plaintiff received two automated text messages within 30 days to his personal cell phone

(915) 383-4604 from Defendant Medspa soliciting cosmetic plastic surgery services without

Plaintiff's prior express written consent.

23.     Each and every automated text message Plaintiff received from Defendant Medspa had a

link to their website https://www.elpasoplasticsurgery.com.

24.     Table below displays calls made to Plaintiff by Defendant:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 04/06/2022 | 8:42 PM | (915) 351-1116 | Automated text message |
| 2. | 04/30/2022 | 6:25 PM | (915) 351-1116 | Automated text message |

25.     Each and every text message Plaintiff received from Defendant Medspa was placed while

knowingly ignoring the national do-not-call registry.  Each and every text message was placed

without training their agents/employees on the use of an internal do-not-call policy.

26.     Defendant Medspa amassed lists of thousands of local residents' cell phone numbers and

sent automated text messages *en masse* to market their cosmetic plastic surgery services.

27.     Defendant Medspa is not registered pursuant to § 302.101 of the Texas Business &

Commerce Code to provide telephone solicitations. The

5

https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registrations.

28.     Defendant Medspa doesn't qualify for an exemption under § 302.053.

29.     No emergency necessitated none of the alleged illegal automated text messages.

30.     Defendant Medspa never sent Mr. Callier any do-not-call policy. Plaintiff sent an internal do-not-call policy request to beth@elpasoplasticsurgery.com on May 18, 2022.

31.     On information and belief, the Defendants did not have a written do-not-call policy while they were sending Mr. Callier the illegal automated text messages.

32.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

33.     No emergency necessitated the text messages.

34.     On information and belief, Defendants did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

### AS A RESULT OF THE CALLS

35.     Defendants' automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

36.     Defendants' automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

37.     Defendants' automated text messages harmed the Plaintiff by intruding upon Plaintiff's seclusion.

38.     Plaintiff has been harmed, injured, and damages by the automated text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration,

6

invasion of privacy, and more frequent charging of my cell phone.

### The Plaintiff's cell phone is a residential number

39.      The automated text messages were to Plaintiff's cellular phone 915-383-4604 which is

Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff

maintains no landline phones at his residence and has not done so for at least 15 years and

primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses

his cell phone for navigation purposes, sending and receiving emails, timing food when cooking,

and sending and receiving text messages. Plaintiff further has his cell phone registered in his

personal name, pays the cell phone from his personal accounts, and the phone is not primarily

used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

40.      The actions of Defendant Medspa violated the Texas Business and Commerce Code

305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The

automated text messages by Defendant Medspa violated Texas law by placing automated text

messages to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC

227(d)(3) and 47 USC 227(e).

41.      The automated text messages by the Defendant Medspa violated Texas law by spoofing

the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code 302.101

42.      The actions of Defendant Medspa violated the Texas Business and Commerce Code §

302.101 by placing solicitation automated text messages to Plaintiff, a Texas resident, without

having a valid solicitation registration certificate and a valid bond.

43.      Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages

7

of up to $5000 per violation of § 302.101.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227(b)(1)(A)
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

44.　Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45.　Defendant Medspa and/or their agents placed automated text messages to Plaintiff's cellular telephone.

46.　Plaintiff never consented to receive automated text messages from Defendant Medspa. Plaintiff has no relationship with Defendant Medspa.

47.　Defendants' automated text messages were made for purposes of advertising and marketing Defendant Medspa's cosmetic plastic surgery services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

48.　The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

49.　As a result of their unlawful conduct, Defendant Medspa repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

50.　Not only did Defendant Medspa make these violating automated text messages, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

51.     If the Court finds that Defendant willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

52.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

53.     The foregoing acts and omissions of Defendant Medspa and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

54.     Defendants sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

55.     Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the automated text messages described above, in the amount of $500 per automated text message.

56.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.
            47 U.S.C. § 227(c)(5)(B).

57.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

9

## THIRD CAUSE OF ACTION

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

58.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

59.    The foregoing acts and omissions of Defendant Medspa and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

      a.   written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

      b.  training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

      c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

60.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

61.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

62.     Plaintiff incorporates the foregoing allegations as if set forth herein.

63.     The foregoing acts and omissions of Defendant Medspa and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Mr. Callier cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

64.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

65.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

## FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

66.     Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

67.     The foregoing acts and omissions of Defendant Medspa and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation automated text messages to Plaintiff's cellular telephone number without his prior express written consent.

68.     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

11

69.     Plaintiff is entitled to recover all reasonable costs of prosecuting the action,

including court costs and investigation costs, deposition expenses, witness fees, and

attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## I. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendant

jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified

and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendant violates the TCPA

and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging

in the unlawful conduct set forth herein;

D.      An award of $1500 per automated text message in statutory damages arising from

the TCPA intentional violations jointly and severally against the corporation for 2 automated text

messages.

E.      An award of $1,500 in statutory damages arising from violations of the Texas

Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas

Business and Commerce code 302.101.

G.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.      An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law

and equity

12

I.      Such further relief as the Court deems necessary, just, and proper.

May 20, 2022                              Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604